**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT** |
| LAHEY HEALTH SYSTEM, INC.; AND ) | |
| LAHEY CLINIC INSURANCE ) | |
| COMPANY, LTD. ) | |
| ) | |
| Defendants ) | |
| ) | |

## SUMMARY OF THE CASE

1. This complaint asserts claims for violations of M.G.L c. 93A § 2 et. seq. and c. 176D against Lahey Health System, Inc. and Lahey Clinic Insurance Company, Ltd. ("Lahey Insurance") for unfair methods of competition and unfair deceptive acts and practices in the business of insurance. These claims arise from Lahey Insurance's failures to properly evaluate the liability and damages in this case and failing to make a prompt and reasonable offer of settlement when the liability of the defendant doctors and Plaintiff's damages were reasonable clear.

## PARTIES

2. The Plaintiff, John Doe, is an adult who currently resides in New York, Manhattan County (New York County), New York 10002.

3. The Defendant, Lahey Health System, Inc. is a Massachusetts corporation with a principal place of business at 41 Mall Road, Burlington, Massachusetts 01805.

4. The Defendant, Lahey Clinic Insurance Company, Ltd., is a foreign corporation and wholly owned subsidiary of Lahey Health System, Inc. with a principal place of business at Craig Appin House 8 Wesley Street, Hamilton HM11, Bermuda.

## JURISDICTION

5. The Defendants were at all relevant times engaged in the business of insurance in Massachusetts and were subject to the personal jurisdiction of this Court.

6. The District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 since there is complete diversity of citizenship between the Plaintiff and each Defendant and

the amount in controversy exceeds $75,000.00.   Venue is proper in the District Court pursuant to 28 U.S.C. § 1391 since the Defendants are Massachusetts entities with a principle place of business in Burlington, Massachusetts and an entity engaged in the business of insurance in Massachusetts at all relevant times.

## **THE FACTS**

7. Plaintiff was a patient of Lahey Clinic beginning in 2005.   As early as November 2006, Lahey Clinic was aware of Plaintiff's sexual orientation as a gay man having sex with men.   Lahey Clinic was also aware that Plaintiff had worked as a paramedic with potential exposure to all types of bodily fluids from victims he may have assisted during the course of his professional work.   In addition, Plaintiff reported to Lahey Clinic that he was concerned about a sexually transmitted disease (syphilis) as a result of a sexual contact that he had with another man in 2006.   Thereafter, Plaintiff presented to the Lahey Clinic with signs and symptoms of HIV infection including facial paralysis on two separate occasions, which were highly suggestive of HIV infection.   Lahey Clinic's medical resident recognized Plaintiff's symptoms as highly suggestive of HIV and advised Plaintiff that he should be tested for HIV.   The resident had Plaintiff sign a written consent for an HIV test, but the test was never performed.   The reason why the test was never performed was because the defendant, Kinan K. Hreib, M.D. ("Dr. Hreib") decided to cancel the test, without ever advising Plaintiff that the test had been canceled.   Dr. Hreib also indicated in his written report that there was no risk of HIV infection, but that testing would be considered.   After Plaintiff was discharged from the hospital, he was informed by Stephen E. Southard, M.D. ("Dr. Southard") and Dr. Hreib that all of his tests were negative.   Plaintiff reasonably believed this included the HIV test because neither defendant doctor advised him that the HIV test had been canceled.   This was an egregious departure from the standard of care by the defendant doctors in failing to inform Plaintiff that Dr. Hreib decided the HIV test was not necessary, and that in fact, the HIV test had been canceled.   At all relevant times, Dr. Hreib and Dr. Southard were insured by the Defendant, Lahey Insurance.

8. Thereafter, Plaintiff continued to present to Lahey Clinic at various times between June 2007 and December 2009, with symptoms that should have alerted the defendant doctors regarding Plaintiff's potential as a high risk patient for HIV infection.   At the recommendation of Dr. Southard, Plaintiff saw infectious disease doctor Daniel P. McQuillen, M.D. ("Dr. McQuillen") on June 21, 2007.   Dr. McQuillen failed to record this visit in Plaintiff's medical records, as required by Massachusetts law and Lahey Clinic's policies.   By Dr. McQuillen's own admission, a record of this visit should have been made and the failure to record this visit was a violation of Lahey Clinic's policies and procedures, and violated the standard of care.   Lahey Insurance failed to properly investigate this violation of the law and the standard of care that resulted in a critical piece of evidence being missing from Plaintiff's medical records, and ignored this fact in evaluating this case for settlement purposes.   Dr. McQuillen saw Plaintiff again on June 9, 2009, and this visit was recorded in the medical records.

9. On each and every occasion that Plaintiff was seen by various providers at Lahey Clinic,

including but not limited to the defendant doctors, all of his medical records were available to Dr. Southard as the primary care physician for Plaintiff.   It was not until January 2010 that, due to the involvement of other doctors, Plaintiff was diagnosed as HIV-positive.

10. As a result of the failures of the defendant doctors to meet the standard of care and the delay in the diagnosis of Plaintiff's HIV-infection, Plaintiff's HIV-infection went untreated for years, resulting in permanent damages to Plaintiff's physical and mental health.

11. In addition to the medical history described above, in 2006 the Centers for Disease Control issued recommendations regarding the screening and testing of all patients between the ages of 13 and 64 for HIV.   These recommendations applied in all clinical settings.   Lahey Clinic completely ignored these recommendations, even though Lahey Clinic specifically referenced the CDC recommendations in their own internal policies and procedures regarding HIV testing.   The CDC recommendations should have been implemented and followed by the Lahey Clinic doctors because Plaintiff signed a written consent form for HIV testing.   The CDC recommendations also advised physicians that high risk patients, such as men who have sex with men, should be tested for HIV annually.   In addition to the CDC recommendations, various other medical publications accepted the CDC recommendations as the standard of care.   In fact, Harrison's textbook on the Principles of Internal Medicine published in 2008, confirmed the significance and importance of the CDC recommendations for members of the medical profession.   Also, numerous other medical associations and publications advocated the implementation of the recommendations in order to protect patients against the HIV infection.   Finally, there were many publications issued prior to 2007 which recognized the association between the facial paralysis (Bell's Palsy) suffered by Plaintiff and HIV infection.

12. During the course of discovery in this case, plaintiff's counsel took the depositions of the defendant doctors and their experts, who demonstrated a lack of knowledge and/or complete arrogance and/or ignorance of HIV testing and screening, and the consequences of failing to properly screen and test patients for HIV infection.   All three defendant doctors- Dr. Southard, Dr. Hreib, and Dr. McQuillen- provided testimony which demonstrated a lack of knowledge about these issues and a complete disregard of CDC recommendations.   The defendant doctors and their designated experts provided other testimony that simply was not credible in light of the medical documentation in this case.

13. On June 4, 2018, trial was held for this matter.   During the hearing on the motions *in limine*, the court indicated that based on the facts presented in the motions *in limine*, there was potential liability against Dr. Hreib.   During the course of the trial, Plaintiff presented overwhelming evidence of the breaches of the standards of care by the defendant doctors, and the injuries Plaintiff suffered as a direct result.   In addition to the medical records, medical literature, and testimony presented, Plaintiff had an economist expert, Dr. Neville Lee, testify that Plaintiff's loss of earning capacity was in the range of $6,390,353.00 to $12,923,077.00.   Despite this uncontradicted evidence of loss of earning capacity, the defendants never presented an expert to counter the testimony of Dr.

        Lee. It was obvious at all relevant times that the Plaintiff had outstanding experts with impeccable reputations, yet Lahey Clinic and Lahey Insurance chose to undervalue this case for reasons that remain quite clear. Plaintiff's medical records demonstrated that as a result of the delay in the diagnosis of his HIV infection, Plaintiff suffered significant cognitive impairment with permanent brain damage proven by MRI images shown to the jury. It was apparent to Plaintiff's counsel that Lahey Insurance was banking on the fact that because the Plaintiff was a gay man with HIV his worth as a person was less than another individual. This demonstrated a clear bias and prejudice against the Plaintiff that constituted unfair and deceptive insurance practices.

14. Prior to the trial, the only time that the defendants engaged in any settlement discussions was when the parties were ordered to attend mediation with Magistrate Bowler. The settlement offer made at mediation was woefully inadequate. Thereafter, at the insistence of Judge Saris, Lahey Clinic was ordered to provide a response to Plaintiff's demand. Lahey Clinic's response was once again inadequate. Plaintiff's counsel engaged in settlement discussions with Lahey Insurance's representative who attended most of the trial. Lahey Insurance's final and last offer from the beginning of trial up to the moment that the verdict was taken was one million dollars. That offer reflected an unfair and inappropriate evaluation of Plaintiff's claims and the damages that he had sustained, which were well supported and documented in the medical records. Moreover, this case was indefensible from a medical peer review perspective.

15. Although Lahey claimed that documentation existed to support the defendants' allegation that Plaintiff had made an excellent recovery, Lahey never undertook any effort to conduct any meaningful independent medical examination, neuropsychological evaluation, or any other type of medical evaluation of Plaintiff, even though they had multiple opportunities to do so. Lahey chose to do an independent medical examination of Plaintiff only after Plaintiff was examined by his own expert for purposes of an updated assessment in May 2018, and the offer remained the same. It is also important to note that this so-called "IME" was conducted by defense expert Dr. Joseph Dalton, who had demonstrated extensive bias and prejudice against plaintiff's cases and had been used extensively by defense firms, which was highlighted during trial. Similarly, Plaintiff's counsel informed Lahey that its defense experts were of poor quality and that this was proof the case was indefensible. Despite defense experts Dr. Carling's and Dr. Dalton's best efforts to fabricate a defense, their efforts failed when they were impeached with their own prior testimonies and the inconsistencies in the medical literature, which contradicted many of their advocated positions.

16. On June 29, 2018, judgment entered against Defendants in the amount of $18,400,000.00 plus pre-judgment interest, costs, and post-judgment interest in amounts to be determined under the relevant state and federal law. Although the jury found Dr. McQuillen also negligent, no causation was found by the jury against Dr. McQuillen. It was obvious at all relevant times that Plaintiff had outstanding experts with impeccable reputations, yet Lahey Insurance chose to undervalue this case for reasons that are obvious.

17. In letters dated June 26, 2018, Plaintiff provided a written demand for relief to Lahey

Clinic and Lahey Insurance due to their violations of M.G.L. c. 93A § 2 et. seq. and c. 176D.   See Demand Letters attached as <u>Exhibit</u> 1.   In a letter dated July 25, 2018, counsel for Lahey Health System, Inc. and Lahey Insurance responded to Plaintiff's written demand by denying Plaintiff's claims in their entirety.   See Response Letter, attached as <u>Exhibit</u> 2.

**<u>COUNT I</u>**
**<u>VIOLATIONS OF M.G.L. c. 93A § 2 et. seq. and c. 176D AGAINST THE DEFENDANT, LAHEY HEALTH SYSTEM, INC.</u>**

18. The Plaintiff repeats and restates the allegations contained in paragraphs 1 through 17 and incorporate said allegations herein by reference.

19. At all relevant times, Lahey Clinic Insurance Company, Ltd. was an insuring entity conducting business in Massachusetts subject to standards imposed by M.G.L. c. 176D § 3(9).

20. At all relevant times, Lahey Clinic Insurance Company, Ltd. was a wholly owned subsidiary of Lahey Health System, Inc.

21. At all relevant times, Lahey Clinic Insurance Company, Ltd. provided professional liability insurance to defendants, Dr. Hreib, Dr. Southard, Dr. McQuillen, and Lahey Clinic, Inc., covering the claims asserted by Plaintiff.

22. Lahey Health System, Inc. violated M.G.L. c. 93A § 2 et. seq. and M.G.L c. 176D § 3(9) by:

    (a) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

    (b) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

    (c) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

    (d) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

23. Such violations of Section 176D constitute unfair or deceptive settlement acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 9.

24. Lahey Health System, Inc.'s actions and inactions were willful and knowing within the meaning of M.G.L. c. 93A, §§ 2 and 9.

    WHEREFORE, Plaintiff demands judgment against the defendant, Lahey Health System,

Inc., in the amount of three times the judgment entered on June 29, 2018 ($55,200,000.00), together with interest, costs, and attorney's fees pursuant to M.G.L. c. 93A, §§ 2 and 9.

## COUNT II
## VIOLATIONS OF M.G.L. c. 93A § 2 et. seq. and c. 176D AGAINST THE DEFENDANT, LAHEY CLINIC INSURANCE COMPANY, Ltd.

25. The Plaintiff repeats and restates the allegations contained in paragraphs 1 through 24 and incorporate said allegations herein by reference.

26. At all relevant times, Lahey Clinic Insurance Company, Ltd. was an insuring entity conducting business in Massachusetts subject to standards imposed by M.G.L. c. 176D § 3(9).

27. At all relevant times, Lahey Clinic Insurance Company, Ltd. was a wholly owned subsidiary of Lahey Health System, Inc.

28. At all relevant times, Lahey Clinic Insurance Company, Ltd. provided professional liability insurance to defendants, Dr. Hreib, Dr. Southard, Dr. McQuillen, and Lahey Clinic, Inc. covering the claims asserted by Plaintiff.

29. Lahey Clinic Insurance Company, Ltd. violated M.G.L. c. 93A § 2 et. seq. and M.G.L c. 176D § 3(9) by:

   (a) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

   (b) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

   (c) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

   (d) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

30. Such violations of Section 176D constitute unfair or deceptive settlement acts or practices within the meaning of M.G.L. c. 93A, §§ 2 and 9.

31. Lahey Clinic Insurance Company, Ltd.'s actions and inactions were willful and knowing within the meaning of M.G.L. c. 93A, §§ 2 and 9.

WHEREFORE, Plaintiff demands judgment against the defendant, Lahey Clinic

Insurance Company, Ltd., in the amount of three times the judgment entered on June 29, 2018 ($55,200,000.00), together with interest, costs, and attorney's fees pursuant to M.G.L. c. 93A, §§ 2 and 9.

                                                    Respectfully Submitted,
The Plaintiff,
By His Attorney,

 */s/ David P. Angueira*
David P. Angueira, Esq.
BBO No.: 019610
David W. Faraci, Esq.
BBO No.: 695324
Swartz & Swartz, P.C.
10 Marshall Street
Boston, MA 01208

Dated: April 29, 2019                                      (617) 742-1900